# EXHIBIT A

Filed
D.C. Superior Court
08/26/2019 11:19AM
Clerk of the Court

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

**SHEFALI MEHTA**
**1828 L Street, N.W Suite 820**
**Washington, D.C 20036**

***Plaintiff***

**v.**

**SYNGENTA CORPORATION**
**1775 Pennsylvania Avenue, NW Suite 600**
**Washington, D.C. 20006**

***Defendant***

**Civil Action No.** 2019 CA 004946 B

**Jury Trial Demand**

**COMPLAINT**

Comes now, Plaintiff Shefali Mehta, by and through her attorneys, and files this Complaint against Defendant Syngenta Corporation (hereinafter "Defendant" or "Syngenta").

Plaintiff Mehta seeks relief pursuant to the D.C. Accrued Sick and Safe Leave Act ("DCASSLA"), as amended, D.C. Code Ann. § 32-131.01 *et seq.*, the District of Columbia Family and Medical Leave Act ("DCFMLA"), D.C. Code Ann. § 32-501 *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981, the D.C. Wage Theft Prevention Act ("DCWTPA"), D.C. Code § 32-1301, *et seq.*, and common law claims for breach of contract, including but not limited to declaratory, injunctive and other equitable relief, compensatory damages, litigation expenses and reasonable attorneys' fees, based on Defendant's discriminatory, harassing, retaliatory, and otherwise unlawful actions against Plaintiff Mehta.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the subject matter of this complaint pursuant to D.C. Code § 11-921.

2. Venue is proper in this court in that the events and omissions giving rise to Plaintiff's claims occurred here in the District of Columbia and Defendant may be found here.

**PARTIES**

3. Plaintiff Mehta is a South Asian female and a resident of the Commonwealth of Virginia. She has a doctorate degree in Agricultural and Applied Economics and was employed as the Head of Economic Seeds and later, as the Head of Data Analytics at Syngenta in the District of Columbia from September 2012 until December 2016.

4. Syngenta Corporation is an international agriculture company, with a place of business in Washington, D.C. and is an employer within the meaning of the D.C. Accrued Sick and Safe Leave Act ("DCASSLA"), as amended, D.C. Code Ann. § 32-131.01 *et seq.*, the District of Columbia Family and Medical Leave Act ("DCFMLA"), D.C. Code Ann. § 32-501 *et seq.*, and the D.C. Wage Theft Prevention Act ("DCWTPA"), D.C. Code § 32-1301, *et seq.*

**FACTS**

5. Dr. Mehta began employment with Syngenta in September 2012, as the Head of Economic Seeds in Research and Development and Production and was employed until her termination on December 9, 2016. She began employment as a Work Level 7, which is the Executive level at Syngenta. Dr. Mehta initially reported to Rolf Furter and was sponsored by Sandro Arrufo, Head of R&D, until he passed away in 2013, and supported jointly by Mark Peacock and Robert Berendes, who became the Head of R&D after Dr. Arrufo passed away. Dr. Mehta is a senior executive with a distinguished career in executive management. Throughout her employment at Syngenta, Dr. Mehta performed at the exceptional level and consistently received Excellent performance evaluations. Four months after she was hired, Dr. Mehta was

given the maximum performance bonus for her position and provided a Long Term Incentive (LTI) payment of $30,000.

6. In 2013, Dr. Mehta worked closely with Mr. Peacock and Dr. Berendes to identify why the Seeds business, especially North American Corn, was losing so much money and how it could be turned around. She was invited to present to the CEO and senior executive team in September 2013, and her presentation was well-received. CEO Mike Mack thanked her for her "candor." Dr. Mehta worked closely with the North American Corn team and other global teams to turn around profits, and as a reward for her performance in 2013, she received an Excellent performance rating and a Short Term Incentive payment of $50,000. Mr. Peacock included a statement in her 2013 performance evaluation that "Shefali is one of the most impactful employees in Syngenta in 2013," despite the fact that there were over 28,000 employees at the time and Dr. Mehta had only been employed since September 2012.

7. Due to the departure of Dr. Berendes and Dr. Eric Bartels, and the retirement of Dr. Furter, Dr. Mehta was placed under the supervision of Dr. Dan Dyer, a Caucasian male and former colleague, in early 2014. Dr. Dyer was the R&D Head for Soybeans and later Corn. In her prior role, Dr. Mehta had had to investigate and report on why Soybeans and Corn were underperforming. Despite Dr. Dyer and Dr. Mehta having a very positive relationship up until this point, and the atmosphere changed drastically when Dr. Furter and Dr. Berendes left Syngenta. Dr. Dyer began to frequently state that others, including Trish Malarkey, who replaced Dr. Berendes, were not happy with Economic Seeds, even though neither Dr. Dyer nor any other of Dr. Mehta's supervisors had expressed dissatisfaction with the state of Economic Seeds prior to the departures of Dr. Furter and Dr. Berendes nor could he provide specific examples of why they were purportedly unhappy. A few of Dr. Mehta's colleagues in Basel,

Switzerland warned her that she might be targeted for removal due to her knowledge of the Seeds business and previous problems created as a result of decisions by senior Executives.

8. In 2014, Dr. Mehta was asked to lead a program called Seeds End-to-End. Although she initially declined a request to lead the program, she was forced to lead the program, in addition to her regular duties. Dr. Mehta reported to Jon Parr and Mark Peacock during this time, in addition to maintaining her Economic Seeds responsibilities. Dr. Mehta was instrumental in structuring a new operating model for Syngenta Seeds, including preparation of a white paper that outlined the transformation. After her work was approved by Mike Mack and moved into implementation, her name was removed from her work.

9. While working for Dr. Dyer, he and other colleagues, including Mr. Parr, subjected Dr. Mehta to verbal abuse, including engaging in derogatory and insulting behavior, such as challenging her knowledge of the industry and attributing false information to her. Despite her exceptional performance, including producing a white paper and supporting the turnaround of the Seeds business, which was adopted and has been followed by Syngenta Seeds since 2014, Dr. Dyer lowered Dr. Mehta's 2014 performance evaluation. Dr. Dyer also cut Dr. Mehta's program budget by 40% and terminated her efforts to transfer to Basel, Switzerland, after Dr. Mehta had submitted paperwork for a work Visa after being asked by Syngenta to move there for two years by several individuals, including Mr. Peacock.

10. In 2014, Dr. Mehta complained to Kimberly Ziebell and Blake Wysong in Syngenta's Human Resources department that female and/or minority and/or other protected classes of employees were not promoted or compensated at the same rate as Caucasian and male employees. She also reported that Syngenta had in place policies and practices, which negatively impacted female and non-Caucasian employees.

11. In September 2014, Jon Parr, the Chief Operating Officer, replaced Dr. Mehta with a less experienced Caucasian male, Marc Hillard, and falsely asserted that Dr. Mehta was not a team player and that she "d[id] not know [her] place". Mr. Parr further stated, according to several Executives in Basel, that she was replaced because she was just "not right" and that he wanted someone he could "relate" to and "feel comfortable with."

12. When the Economic Seeds program came to an end in 2015, Dr. Mehta interviewed for a position as the Head of Computational Biology in Raleigh, North Carolina, which reported to Dr. Michiel van Lookeren Campagne. Dr. Mehta was well-qualified for the position, which required her to run an eighty (80) employee team in North Carolina, after she had a significant role in turning around several seed business units within Syngenta globally working with several hundred employees, as well as having background skills in the area. Dr. Mehta was denied the position without justification. Dr. van Lookeren Campagne suggested that she was not selected due to "input from colleagues in Basel," even though he had previously indicated that she was a strong candidate for the position and had solicited her to apply to two different roles in his team stating that he "hoped to have her join his team."

13. In 2015 and 2016, the North American Corn portfolio turned from a negative profit margin to meeting its budget target for the first time in years in large part because of Dr. Mehta's efforts. She was recognized by Chuck Lee, Wally Palm, and Brooke Achenbach as being instrumental in driving the turnaround and creating a platform for the Syngenta Seeds business.

14. Dr. Mehta prepared to end her employment at Syngenta at the end of 2015 due to limited employment options but decided to extend her employment because Dr. Dyer wanted Dr. Mehta to work in the computational science area, which was the same area that she previously

interviewed for with Dr. van Lookeren Campagne. In December 2015, Dr. Dyer created a position of Head of Data Analytics and offered the position to Dr. Mehta and informed her that she would report to Joe Byrum, a Caucasian male. Dr. Byrum had developed a reputation at Syngenta as being a misogynist, who was rude, offensive and generally unprofessional in his interactions and in his interactions with female Syngenta employees in particular. Dr. Mehta informed Dr. Dyer that she did not want to report to Dr. Byrum based on her prior interactions with him, but Dr. Dyer required her to report to Dr. Byrum and later denied her a promised position title and informed her in November 2015 that if she did not like what was happening with Syngenta, she was welcome to leave her employment. Dr. Dyer later agreed to allow Dr. Mehta to continue reporting to him, rather than Dr. Byrum.

15. In 2016, Dr. Mehta began managing the Data Analytics team in Raleigh, North Carolina, while based in Washington, D.C. While in transit between airports in New York City on work related travel returning from Basel in January 2016, she was involved in an automobile accident and suffered a major head injury and concussion. After the vehicular accident, she was incapacitated. Dr. Mehta met with a neurologist and concussion specialist, and they confirmed that she was suffering the symptoms of a traumatic head injury, and she needed treatment for vision issues in one of her eyes, dizziness, nausea, inability to sleep, chronic pain and inability to turn her neck fully in addition to several concussion symptoms. Dr. Mehta's doctors recommended that she stop all international travel. She shared this with Dr. Dyer and was referred to a nurse in Greensboro, NC. The nurse called Dr. Mehta and interrogated her. Dr. Mehta kept telling the nurse that she was in pain and confused and asked for some time to respond to her questions but the nurse persisted. She also informed the nurse that she had trouble reading but the nurse ignored this. She was later informed by the nurse that despite being on

business travel, the accident did not "count as an injury" during travel. She appealed to HR and Dr. Dyer, and they both said they were not sure what to do, so Dr. Mehta was forced to keep working full time. On June 26, 2016, Dr. Mehta advised Dr. Dyer and Ms. Ziebell that she was receiving treatment for the side effects from a concussion that she suffered in January 2016, and that she had met with a neurologist and concussion specialist and they confirmed that she was suffering the symptoms of a traumatic head injury and receiving treatment for conditions related to her traumatic head injury. She also notified them that she would need to attend physical therapy sessions two to three times each week and that she would not be able to travel internationally for several months.

16. In the summer of 2016, during a performance review, Dr. Dyer told Dr. Mehta that Defendant was changing her role and reducing her visibility because she was working with people from small Midwestern towns who were not used to people who were different.

17. In response to Dr. Mehta's notice of her need to take leave to attend medical appointments, in August 2016 Dr. Dyer removed Dr. Mehta from the organization project she was leading and had almost completed pursuant to a reorganization. The reorganization of the Seeds business provided clear roles for all employees in Seeds Research and Development except for Dr. Mehta.

18. In the summer of 2016, during a performance review, Dr. Dyer told Dr. Mehta that the actions taken against her were motivated in part because she was working with people from small Midwestern towns who were not used to people who were different.

19. Dr. Mehta was so concerned with the changes to her role that she asked Dr. Dyer what was happening to her employment in September 2016. Dr. Dyer informed Dr. Mehta in October 2016 that her role was being eliminated, and initially suggested that she look for other

roles in Syngenta. However, two days later, he informed her that she was being terminated. Dr. Dyer later informed her that he was reprimanded by Natalia Walberg, the HR lead for the Seeds Research & Development department, for sharing this information. He further indicated that the team in Basel was trying to keep her departure quiet and hidden from her colleagues.

20. In November 2016, Dr. Dyer informed Dr. Mehta that she was being terminated effective December 9, 2016. On December 6, 2016, HR provided Dr. Mehta with formal notice of her termination effective December 9, 2016 purportedly due to a job elimination. Dr. Mehta's team and her function still existed, but both her team and her function were placed under Joe Byrum. She wrote back to Kimberly Ziebell and the two Syngenta employment lawyers to ask for the following items: a mutual non-disparagement clause because she had observed several people in the team unfairly treat employees who departed, questioning the stipulation in the severance documents that she would be forced to drop all claims, including the head injury issues that were ongoing and were still being treated, and an explanation of why she was the only one let go for "budget reasons."

21. On December 9, 2016, her last day of employment with Syngenta, Dr. Mehta reported that her termination was motivated by gender, racial, and disability discrimination and that her prior complaints of discrimination had not been investigated. Syngenta refused to address the issues of employment discrimination and retaliation that she raised in 2016 and prior to 2016 and would not allow her to pursue recouping the medical expenses she lost as a result of her head injury during the Syngenta business trip. She was offered twelve weeks of severance pay, and the Short Term Incentive pay she earned in 2016, which was $50,000, pursuant to Syngenta's policies. Syngenta's policies provide that Short Term Incentive pay will be paid at 100% target, pro-rated for the number of days worked upon termination of an employee. When

Dr. Mehta refused to sign the Severance Agreement, Defendant Syngenta refused to pay her the bonus she earned for her work in 2016 in violation of its policies. Defendant Syngenta also refused to pay her approximately $100,000 in stock options to which she was entitled, as she had received them in previous years, and they had offered her in December 2016.

**COUNT I**

**Violation of the D.C. Wage Theft Prevention Act, D.C. Code § 32-1301, *et seq.***

22. Plaintiff Mehta incorporates by reference all paragraphs above as if fully stated herein.

23. At all pertinent times, Defendant Syngenta was an "employer" within the definition of the D.C. Wage Theft Prevention Act, D.C. Code § 32-1301(1).

24. At all pertinent times, Plaintiff Mehta was an "employee" within the definition of the D.C. Wage Theft Prevention Act, D.C. Code § 32-1301(2).

25. The D.C. Wage Theft Prevention Act, D.C. Code § 32-1301, defines wages to include a bonus, and requires employers to pay all wages due to a discharged employee within one day of termination. Dr. Mehta earned a 2016 Short Term Incentive bonus of $50,000 and was offered the bonus as part of the severance agreement in December 2016, but when she declined the severance agreement, she was not paid the bonus. Under the District of Columbia Wage Theft Prevention Act, "[w]henever an employer discharges an employee, the employer shall pay the employee's wages earned not later than the working day following such discharge." D.C. Code Ann. § 32-1303(1). "'Wages' means all monetary compensation after lawful deductions, owed by an employer, whether the amount owed is determined on a time, task, piece, commission, or other basis of calculation. The term 'wages' includes a: (A) Bonus;...and

(E) Other remuneration promised or owed: (i) Pursuant to a contract for employment, whether written or oral." D.C. Code § 32-1301(3).

26. Plaintiff Mehta was terminated by Syngenta on December 9, 2016, and at the time of her termination, she had earned $50,000 in a bonus for her work in 2016, which had not been paid. Defendant Syngenta did not pay Plaintiff Mehta the 2016 bonus the day after her termination. Plaintiff Mehta made a final demand, through counsel, for the bonus, and Defendant Syngenta refused to pay her. Defendant Syngenta is now liable for treble damages for failure to pay the bonus when due.

27. Defendant, in violation of the D.C. Wage Theft Prevention Act, knowingly and intentionally withheld and refuses to pay Plaintiff Mehta $50,000 in wages earned by Plaintiff Mehta.

28. Defendant has no legitimate business reason for withholding Plaintiff's wages.

## COUNT II

### Breach of Contract

29. Plaintiff Mehta incorporates by reference all paragraphs above as if fully stated herein

30. Defendant Syngenta breached an express or implied contract with Plaintiff Mehta when it intentionally, and without justification or a bona fide dispute, failed to pay Plaintiff Mehta the 2016 bonus she earned, in violation of Syngenta's policies. Specifically, Defendant Syngenta failed to pay Plaintiff Mehta her 2016 bonus.

31. Plaintiff Mehta was terminated by Syngenta on December 9, 2016, and at the time of her termination, she had earned $50,000 in a bonus for her work in 2016, as well as approximately $100,000 in stock options, which had not been paid. Defendant Syngenta did not

pay Plaintiff Mehta the 2016 bonus the day after her termination. Plaintiff Mehta made a final demand, through counsel, for the bonus, and Defendant Syngenta refused to pay her.

32. Defendant, in violation of the D.C. Wage Theft Prevention Act, knowingly and intentionally withheld and refuses to pay Plaintiff Mehta $50,000 in wages earned by Plaintiff Mehta.

33. Defendant has no legitimate business reason for withholding Plaintiff's wages.

**COUNT III**

**Violation of the District of Columbia Accrued Sick and Safe Leave Act**
**D.C. Code § 32-131.01 *et seq.***

34. Plaintiff Mehta incorporates by reference all paragraphs above as if fully stated herein.

35. At all pertinent times, Defendant Syngenta was an employer subject to provisions of the D.C. Accrued Sick and Safe Leave Act, as amended, D.C. Code Ann. § 32-131.01 *et seq.*

36. At all pertinent times, Plaintiff Mehta was an employee entitled to protection under the D.C. Accrued Sick and Safe Leave Act, as amended, D.C. Code Ann. § 32-131.01 *et seq.*

37. The D.C. Accrued Sick and Safe Leave Act, as amended, D.C. Code Ann. § 32-131.01 *et seq.* ("ASSLA") requires employers to permit employees to take leave for medical appointments and prohibits employers from interfering with, restraining or otherwise denying the exercise or attempt to exercise any right under the Act.

38. ASSLA protects an employee from termination from employment because she is absent from work due to a medical condition and to obtain professional medical diagnosis and care; and prohibits an employer from interfering with, restraining, or denying the exercise of, or the attempt to exercise any right provided by ASSLA. The Act further provides that an action

may be maintained against an employer in court for a violation of the Act and the employee may recover backpay, and obtain reinstatement, compensatory and punitive damages and attorney's fees and costs. Syngenta violated ASSLA by deterring Dr. Mehta from treating her head injury, which delayed her recovery, and by terminating her employment because she was absent from work due to a medical condition and to obtain professional medical diagnosis and care. Dr. Mehta provided advanced notice to her supervisor in June 2016 that she was receiving treatment for the side effects from a concussion that she suffered in January 2016, and that she had met with a neurologist and concussion specialist and they confirmed that she was suffering the symptoms of a traumatic head injury, and she needed treatment for vision issues in one of her eyes, dizziness, nausea, in ability to sleep, chronic pain and inability to turn her neck fully. Dr. Mehta's doctors previously recommended that she stop all international travel. On June 26, 2016, Dr. Mehta advised Dr. Dyer and Ms. Ziebell that she would need to attend physical therapy sessions two to three times each week and that she would not be able to travel internationally for several months. Plaintiff Mehta requested leave for medical appointments for her medical condition. Defendant interfered with Plaintiff's right to take leave and retaliated against her for taking leave and terminated her on December 9, 2016. Plaintiff Mehta's exercise of her rights was a substantial or motivating factor in the adverse actions taken against her by the Defendant.

39. As a direct and proximate cause of the Defendant's actions, Plaintiff Mehta lost wages and benefits and suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness, and damage to her employment and personal reputation.

**COUNT IV**

**Violation of the District of Columbia Family and Medical Leave Act D.C. Code Ann. § 32-501 *et seq.***

40. Plaintiff Mehta incorporates by reference all paragraphs above as if fully stated herein.

41. The District of Columbia Family and Medical Leave Act, D.C. Code Ann. § 32-501 *et seq.*, D.C. Mun. Regs. Tit. 4 § 1600 *et seq.*, requires all employers, including the District of Columbia, to provide up to sixteen weeks of unpaid family leave for the birth of a child, adoption or foster care or to care for a seriously ill family member and up to sixteen weeks of unpaid medical leave to recover from a serious illness rendering the employee unable to work. The leave may also be taken intermittently, in the case of a serious health condition, as defined in the D.C. Family and Medical Leave Act.

42. At all pertinent times, the Defendant Syngenta was an employer subject to provisions of D.C. Family and Medical Leave Act. At all pertinent times, Plaintiff Mehta was an eligible employee entitled to invoke her rights under the D.C. Family and Medical Leave Act.

43. The D.C. Family and Medical Leave Act ("DC FMLA") prohibits an employer from denying an employee his/her rights under this Act and prohibits an employer from discriminating against an employee because she requests DC FMLA leave or retaliating against an employee because she takes DC FMLA leave.

44. In violation of the DC FMLA, Defendant denied Plaintiff her right to take up to sixteen weeks of leave under the DC FMLA and terminated her employment effective December 9, 2016 for taking leave and/or requesting leave under the DC FMLA. Defendant was aware that Plaintiff Mehta was requesting leave for her own medical treatment. Plaintiff Mehta took

intermittent leave in 2016. Defendant interfered with Plaintiff Mehta's use of DC FMLA leave and retaliated against her and terminated her employment on December 9, 2016.

45. Defendant at all relevant times had actual and constructive knowledge of the conduct described above.

46. Defendant had no legitimate business reason for any of such acts.

**COUNT V**

**Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981**
**(Race Discrimination and Retaliation)**

47. Plaintiff Mehta incorporates by reference all paragraphs above as if fully stated herein.

48. The Civil Rights Act of 1866, 42 U.S.C. § 1981 provides that all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts as is enjoyed by white citizens and prohibits an employer from discriminating against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of such individual's race, ancestry, or ethnicity, and prohibits retaliation because an employee engages in protected activity.

49. In violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, Defendant knowingly and intentionally discriminated against Plaintiff on the basis of her race in the making and enforcing of contracts and retaliated against her for complaining about discrimination. There is direct evidence of discrimination because during a performance review in summer of 2016, Dr. Dyer told Dr. Mehta that the actions taken against her were motivated in part because she was working with people from small Midwestern towns who were not used to people who were different. Dr. Mehta was treated differently than Caucasian males in the terms, conditions and privileges of employment, when she was passed over for positions, received a lowered

evaluation and was singled out and targeted for termination. Plaintiff was removed from a project in 2015 by the Chief Operating Officer John Parr because she was just "not right" and that Mr. Parr wanted someone he could "relate" to and "feel comfortable with" and when she complained to human resources, she was told that she "do[es] not know [her] place." Plaintiff Mehta was denied a position in August 2016 when her Caucasian colleagues were placed in other positions; selected for termination; and denied a bonus she earned for her efforts in 2016. Plaintiff Mehta was terminated because she opposed Syngenta's discriminatory practices.

50. As a direct and proximate result of Syngenta's actions, Plaintiff Mehta suffered and continues to suffer, among other things, loss of employment, lost earnings and benefits, humiliation, emotional pain, suffering, embarrassment, and loss of enjoyment of life.

**Prayer for Relief**

WHEREFORE, Plaintiff Mehta prays as follows:

A. That the court issue an Order declaring Defendant's actions to be a violation of the District of Columbia Accrued Sick and Safe Leave Act as amended, D.C. Code Ann. § 32-131.01 *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981, the District of Columbia Family and Medical Leave Act, D.C. Code Ann. § 32-501 *et seq.*, the D.C. Wage Theft Prevention Act, D.C. Code § 32-1301, and breach of contract, and declaring Plaintiff eligible to receive equitable and other relief;

B. Enter judgment against the Defendant;

C. Issue a permanent injunction prohibiting Defendant from engaging in any discriminatory terminations and retaliation;

D. Enter judgment in favor of Plaintiff against Defendant for all equitable monetary damages available under the law, including but not limited to back pay and front pay in amounts to be determined at trial and all bonuses and stock options to which Plaintiff is entitled;

E. Order Defendant to refrain from any retaliation against Plaintiff or any other person, for participating in or supporting this case in any manner;

F. Order Defendant, individually and collectively, to pay compensatory and punitive damages in an amount to be determined at trial;

G. Order Defendant to pay Plaintiff's reasonable attorneys' fees, expert fees and costs; and

H. Order Defendant to pay pre-judgment and post-judgment interest as provided by law.

Respectfully submitted,

/s/

David A. Branch, #438764
Law Offices of David A. Branch & Associates, PLLC
1828 L Street, NW, Suite 820
Washington, DC 20036
(202) 785-2805 (phone)
(202) 785-0289 (fax)

**Jury Trial Demand**

Plaintiff demands a jury trial on all claims against Defendant.

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Shefali Mehta
Plaintiff

vs.

Case Number 2019 CA 004946 B

Syngenta Corporation
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

David A. Branch
Name of Plaintiff's Attorney

1828 L Street, NW, Suite 820
Address
Washington, D.C 20036

202 785 2805
Telephone

*Clerk of the Court*

By ______________________
Deputy Clerk

Date 08/01/2019

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español




**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

________________________________________
Demandante

contra

Número de Caso: ________________________

________________________________________
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) dias, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

____________________________________
Nombre del abogado del Demandante

Por: ______________________________
Subsecretario

____________________________________
Dirección

____________________________________

Fecha ______________________________

____________________________________
Teléfono

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedirayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Shefali Mehta

Case Number: 2019 CA 004946 B

vs

Date: July 26, 2019

Syngenta Corporation

☐ One of the defendants is being sued in their official capacity.

| Name: *(Please Print)* David A. Branch | Relationship to Lawsuit |
|---|---|
| Firm Name: Law Office of David A. Branch & Associates | ☑ Attorney for Plaintiff<br>☐ Self (Pro Se)<br>☐ Other: ________ |
| Telephone No.: (202) 785-2805 Six digit Unified Bar No.: 438764 | |

TYPE OF CASE: ☐ Non-Jury ☑ 6 Person Jury ☐ 12 Person Jury

Demand: $ ________ Other: ________

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: ________ Judge: ________ Calendar #: ________

Case No.: ________ Judge: ________ Calendar#: ________

NATURE OF SUIT: *(Check One Box Only)*

**A. CONTRACTS** **COLLECTION CASES**

- ☐ 01 Breach of Contract
- ☐ 02 Breach of Warranty
- ☐ 06 Negotiable Instrument
- ☐ 07 Personal Property
- ☑ 13 Employment Discrimination
- ☐ 15 Special Education Fees

- ☐ 14 Under $25,000 Pltf. Grants Consent
- ☐ 17 OVER $25,000 Pltf. Grants Consent
- ☐ 27 Insurance/Subrogation Over $25,000 Pltf. Grants Consent
- ☐ 07 Insurance/Subrogation Under $25,000 Pltf. Grants Consent
- ☐ 28 Motion to Confirm Arbitration Award (Collection Cases Only)

- ☐ 16 Under $25,000 Consent Denied
- ☐ 18 OVER $25,000 Consent Denied
- ☐ 26 Insurance/Subrogation Over $25,000 Consent Denied
- ☐ 34 Insurance/Subrogation Under $25,000 Consent Denied

**B. PROPERTY TORTS**

- ☐ 01 Automobile
- ☐ 02 Conversion
- ☐ 07 Shoplifting, D.C. Code § 27-102 (a)
- ☐ 03 Destruction of Private Property
- ☐ 04 Property Damage
- ☐ 05 Trespass

**C. PERSONAL TORTS**

- ☐ 01 Abuse of Process
- ☐ 02 Alienation of Affection
- ☐ 03 Assault and Battery
- ☐ 04 Automobile- Personal Injury
- ☐ 05 Deceit (Misrepresentation)
- ☐ 06 False Accusation
- ☐ 07 False Arrest
- ☐ 08 Fraud

- ☐ 10 Invasion of Privacy
- ☐ 11 Libel and Slander
- ☐ 12 Malicious Interference
- ☐ 13 Malicious Prosecution
- ☐ 14 Malpractice Legal
- ☐ 15 Malpractice Medical (Including Wrongful Death)
- ☐ 16 Negligence- (Not Automobile, Not Malpractice)

- ☐ 17 Personal Injury- (Not Automobile, Not Malpractice)
- ☐ 18Wrongful Death (Not Malpractice)
- ☐ 19 Wrongful Eviction
- ☐ 20 Friendly Suit
- ☐ 21 Asbestos
- ☐ 22 Toxic/Mass Torts
- ☐ 23 Tobacco
- ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE IF USED

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment
- ☐ 17 Merit Personnel Act (OEA) (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify, Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

II.

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)
- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as Judgment [ D.C. Code § 2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code § 42-3301, et seq.)
- ☐ 21 Petition for Subpoena [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1) (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)
- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

[signature]
Attorney's Signature

July 26, 2019
Date



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

SHEFALI MEHTA
Vs. C.A. No. 2019 CA 004946 B
SYNGENTA CORPORATION

# INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge HIRAM E PUIG-LUGO
Date: July 29, 2019
Initial Conference: 9:30 am, Friday, November 01, 2019
Location: Courtroom 317
500 Indiana Avenue N.W.
WASHINGTON, DC 20001

**ADDENDUM TO INITIAL ORDER AFFECTING ALL MEDICAL MALPRACTICE CASES**

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Robert E. Morin