**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SHEFALI MEHTA, | ) |
|     *Plaintiff*, | ) |
| v. | ) Case No. 1:19-cv-3011-RCL |
| SYNGENTA CORPORATION, | ) |
|     *Defendant*. | ) |

**MEMORANDUM OPINION**

On July 26, 2019, plaintiff Shefali Mehta ("Dr. Mehta") filed suit against defendant Syngenta Corporation ("Syngenta") in the Superior Court for the District of Columbia. Dr. Mehta alleges that Syngenta is liable for: the violation of the D.C. Wage Theft Prevention Act, D.C. Code § 32-1301 (Count I); breach of contract (Count II); the violation of the D.C. Accrued Sick and Safe Leave Act, D.C. Code § 32-131.01 (Count III); the violation of the D.C. Family and Medical Leave Act, D.C. Code § 32-501 (Count IV); and the violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981. ECF No. 1-3 at 10-16. Syngenta filed its Notice of Removal on October 8, 2019. ECF No. 1. This Court has both federal question and diversity jurisdiction. *See* 28 U.S.C. §§ 1131 and 1332.

On October 15, 2019, Syngenta filed a Partial Motion to Dismiss Counts III, IV, and V of the Complaint for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6). ECF No. 5. Upon consideration of the motion, opposition (ECF No. 7), and reply (ECF No. 9), the Court will **GRANT IN PART AND DENY IN PART** Syngenta's motion. The motion will be **DENIED** with respect to Count III and Count V. The motion will be **GRANTED** with respect to Count IV, which will be **DISMISSED** with prejudice.

## BACKGROUND[1]

Dr. Shefali Mehta is a South Asian female with a doctorate degree in Agricultural and Applied Economics who resides in Virginia. ECF No. 1-3 at 3. She was employed as the Head of Economic Seeds and later as the Head of Data Analytics at Syngenta in the District of Columbia from September 2012 until December 2016. *Id.* Syngenta is an international agriculture company with a place of business in Washington, D.C. *Id.* Dr. Mehta alleges that Syngenta is an employer within the meaning of the D.C. Accrued Sick and Safe Leave Act ("ASSLA"), the D.C. Family and Medical Leave Act ("FMLA"), and the D.C. Wage Theft Prevention Act. *Id.*

According to Dr. Mehta, she began working for Syngenta in September of 2012 as the Head of Economic Seeds in Research and Development and Production and was employed until her termination on December 9, 2016. *Id.* She began at the executive level, consistently received excellent performance evaluations for the first few years of her employment, and received the maximum performance bonus just four months after she was hired. *Id.* at 3-4. In 2013, she was tasked with identifying why the Seeds business was losing so much money and how that problem could be fixed; her presentation to the CEO and executive team was well-received. *Id.* at 4. She continued to receive excellent performance reviews and bonuses. *Id.*

In early 2014, Dr. Mehta's previous supervisors left Syngenta, and she was placed under the supervision of Dr. Dan Dyer, a Caucasian male and former colleague. *Id.* Dr. Dyer was apparently unhappy with Economic Seeds, and some of Dr. Mehta's colleagues in Basel, Switzerland warned her that she might be targeted for removal due to her knowledge of the Seeds business and previous problems created as a result of decisions by senior executives. *Id.* at 4-5. Also in 2014, Dr. Mehta was forced to lead the new Seeds End-to-End program; she was

---

[1] Because Rule 12(b)(6) requires the Court to assume that the plaintiff's allegations are true, the Court is taking all of the facts set forth below directly from Dr. Mehta's Complaint (ECF No. 1-3).

instrumental in structuring a new operational model for Syngenta Seeds, but her name was removed from her work. *Id.* at 5. Dr. Dyer and Jon Parr (the Chief Operating Officer) began verbally abusing her, challenging her knowledge of the industry, and attributing false information to her. *Id.* at 5-6. Despite her continued exceptional performance, Dr. Dyer lowered her 2014 performance evaluation, cut her program budget by 40%, and terminated her efforts to transfer to Basel, Switzerland. *Id.* at 5.

In 2014, Dr. Mehta complained to Syngenta's Human Resources department that female and/or minority and/or other protected classes of employees were not promoted or compensated at the same rate as Caucasian and male employees. *Id.* She also reported that Syngenta had in place policies and practices that negatively impacted female and non-Caucasian employees. *Id.* In September of 2014, Mr. Parr replaced Dr. Mehta with a less experienced Caucasian male and falsely asserted that she was not a team player and did not know her place. *Id.* at 6. According to several executives in Basel, Mr. Parr claimed that she was replaced because she was not the right fit and he wanted someone he could relate to and feel comfortable with. *Id.* When the Economic Seeds program came to an end in 2015, Dr. Mehta interviewed for a position as the Head of Computational Biology in Raleigh, North Carolina. *Id.* Despite being well-qualified for the role and being specifically asked to apply, she was denied the position without justification. *Id.* The supervisor at the company in Raleigh suggested that she was not selected due to input from her Syngenta colleagues in Basel. *Id.*

Dr. Mehta planned to end her employment at Syngenta at the end of 2015 due to limited employment options but ultimately decided to extend her employment because Dr. Dyer created the position of Head of Data Analytics for her. *Id.* at 6-7. Her new supervisor was Dr. Joe Bynum, a Caucasian male with a reputation for being misogynistic, rude, offensive and generally

3

unprofessional, especially with female employees at Syngenta. *Id.* at 7. Dr. Mehta informed Dr. Dyer that she did not want to report to Dr. Bynum based on her prior interactions with him, but Dr. Dyer required her to report to him anyway. *Id.* Dr. Dyer later denied her a promised position title and informed her in November of 2015 that if she did not like what was happening with Syngenta, she was welcome to leave. *Id.* Dr. Dyer eventually allowed Dr. Mehta to continue reporting to him instead of to Dr. Bynum. *Id.*

In 2016, Dr. Mehta began managing the data analytics team in Raleigh, North Carolina while based in Washington, D.C. *Id.* In January of 2016, while in transit between airports in New York City on work related travel after returning from Basel, she was involved in a car accident and suffered a major head injury and concussion, leaving her incapacitated. *Id.* She saw a neurologist and concussion specialist who confirmed that she was suffering from a traumatic head injury and needed treatment for vision issues, dizziness, nausea, inability to sleep, chronic pain, inability to fully turn her neck, and other concussion symptoms. *Id.* Her doctors recommended stopping all international travel, which she shared with Dr. Dyer. *Id.* He referred her to a nurse in Greensboro, North Carolina who called and interrogated her and then informed her that the accident did not constitute an injury during travel. *Id.* at 7-8. She appealed to Human Resources and Dr. Dyer, and they told her that they were unsure of what to do. *Id.* at 8. Syngenta forced her to continue working full time. *Id.* On June 26, 2016, Dr. Mehta informed them that she was still suffering from her head injuries, would need to attend physical therapy several times a week, and would have to cease international travel for several months. *Id.*

During Dr. Mehta's performance review in the summer of 2016, Dr. Dyer told her that he was changing her role and reducing her visibility because she was working with people from small Midwestern towns who were not used to people who were different. *Id.* In August of 2016,

in response to her need to take leave to attend medical appointments, Dr. Dyer removed her from the organization project she was leading. *Id.* Syngenta was supposedly reorganizing the Seeds business, but the reorganization left positions for all employees in Seeds Research and Development except for Dr. Mehta. *Id.* During her summer of 2016 performance review, Dr. Dyer told Dr. Mehta that the actions taken against her were motivated in part because she was working with people from small Midwestern towns who were not used to people who were different. *Id.* In September of 2016, Dr. Mehta was concerned with the changes to her role and asked Dr. Dyer what was happening to her employment. *Id.* He informed her in October of 2016 that her role was being eliminated. *Id.* He initially suggested that she look for other roles within Syngenta, but two days later, he told her that she was being terminated. *Id.* at 8-9. He later informed her that the Human Resources lead for the Seeds Research & Development department reprimanded him for sharing this information and that the team in Basel was trying to keep her departure quiet and hidden from her colleagues. *Id.* at 9. In November of 2016, Dr. Dyer informed Dr. Mehta that her termination would go into effect on December 9, 2016. *Id.* On December 6, 2016, Human Resources provided her with a formal notice of termination due to purported job elimination. *Id.* Her team and her function still existed but were now under Dr. Bynum's supervision. *Id.* Dr. Mehta requested a mutual non-disparagement clause because she had observed several people on the team unfairly treat employees who departed. *Id.* She also questioned the stipulation in the severance documents that she would be forced to drop all claims, including the head injury issues that were ongoing and still being treated, as well as an explanation of why she was the only one being let go for purported budgetary reasons. *Id.*

On December 9, 2016 (her last day with Syngenta), Dr. Mehta reported that her termination was motivated by gender, racial, and disability discrimination and that her prior

complaints of discrimination had not been investigated. *Id.* Syngenta refused to address the issues of employment discrimination and retaliation that she raised in 2016 and prior to 2016 and would not allow her to pursue recouping the medical expenses she lost as a result of her head injury. *Id.* Pursuant to Syngenta's policies, it offered her twelve weeks of severance pay and the Short Term Incentive pay she earned in 2016. *Id.* When Dr. Mehta refused to sign the severance agreement, Syngenta violated its own policies by refusing to pay her the bonus she earned for her work in 2016. *Id.* at 9-10. Syngenta also refused to pay her approximately $100,000 in stock options to which she was entitled. *Id.* at 10.

## LEGAL STANDARD

Rule 12(b)(6) requires courts to dismiss any case wherein the plaintiff has failed to state a legal claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding a motion to dismiss under Rule 12(b)(6), courts must construe the pleadings broadly and assume that the facts are as plaintiff alleges; however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Additionally, courts are not obligated to "accept as true a legal conclusion couched as a factual allegation." *Papsan v. Allain*, 478 U.S. 265, 286 (1986). Essentially, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

**ANALYSIS**

For the reasons stated below, the Court will deny Syngenta's motion with respect to Count III and Count V but will grant Syngenta's motion with respect to Count IV.

**I. COUNT III**

In Count III, Dr. Mehta alleges that Syngenta violated the ASSLA, D.C. Code § 32-131.01. Syngenta argues that the Court should dismiss this count under Rule 12(b)(6). Syngenta claims that Dr. Mehta has failed to plead that she was an "employee" who qualified for benefits under the ASSLA. The term "employee" includes an individual

> who is employed by the employer in more than one location and spends more than fifty percent (50%) of his or her working time for his or her employer in the District of Columbia or whose employment is based in the District of Columbia and who regularly spends a substantial part of his or her time working for the employer in the District of Columbia and does not spend more than fifty percent (50%) of his or her work-time working for the employer in any particular state.

D.C. Mun. Regs. Tit. 7, § 3299. Dr. Mehta's Complaint states that "[a]t all pertinent times" Dr. Mehta "was an employee entitled to protection under the [ASSLA]." ECF No. 1-3 at 12. Syngenta complains that this is "conclusory" and insufficient to show that she met the location requirements. ECF No. 5 at 10. The Court disagrees. In reviewing a Rule 12(b)(6) motion, the Court must make all inferences in the plaintiff's favor. When coupled with the factual assertions that she incorporated by reference into Count III, including the factual assertion that she was "based in Washington, D.C.," ECF No. 1-3 at 7, the statement that she was an employee entitled to protection under the ASSLA is sufficient. Although Dr. Mehta did not provide many details about the location of her employment, the Court has enough information to infer that she (at least allegedly) meets the location requirement. Syngenta apparently takes issue with the fact that Dr. Mehta's Complaint mentions numerous locations other than Washington, D.C., including North

7

Carolina, New York, and Switzerland. The fact that she has traveled to other cities for work, however, does not negate her contention that she was based in D.C. It is true that important factual allegations in this case occurred outside of D.C., but that does not mean that she is not an employee qualified for protection under the ASSLA. Of course, the Court's finding that she has properly stated a claim under the ASSLA does not mean that she will ultimately succeed on this claim, but that is an issue for another day. The Court will therefore deny Syngenta's motion to dismiss Count III for failure to state a claim.

## II. COUNT IV

In Count IV, Dr. Mehta alleges that Syngenta violated the FMLA, D.C. Code § 32-501. Syngenta argues that the Court should dismiss this count under Rule 12(b)(6).

### A. Dr. Mehta Has Not Failed to Plead That She Was an Employee Entitled to Relief Under the FMLA.

Syngenta's first argument is that Dr. Mehta has failed to plead that she was an employee entitled to relief under the FMLA. An employee is

> deemed to work within the District if the person spends more than fifty percent (50%) of his or her work-time working for the employer in the District, if the person is employed by the employer in more than one (1) location, or the employee is based in the District of Columbia and regularly spends a substantial part of his or her time working for the employer in the District of Columbia and does not spend more than fifty percent (50%) of his or her work-time working for the employer in any particular state.

D.C. Mun. Regs. Tit. 4 § 1603.5. Syngenta's argument about location under Count IV, however, fails for the same reason that its argument about location under Count III failed. When drawing all reasonable inferences in her favor, Dr. Mehta has adequately pleaded that she was an employee entitled to relief under the FMLA.

**B. Dr. Mehta's FMLA Claim is Time-Barred.**

Syngenta's second argument is that Count IV is untimely. The FMLA has a one-year statute of limitations. *See* D.C. Code §§ 32-509(a) ("A complaint shall be filed within 1 year of the occurrence or discovery of the alleged violation of this chapter."). The most recent factual allegation relating to Dr. Mehta's FMLA claim occurred in 2016, but she did not file this lawsuit until 2019. Notably, Dr. Mehta's opposition to the motion to dismiss fails to mention Count IV, and she offers no reason why her claim would not be considered time-barred. *See generally* ECF No. 7. The statute of limitations has clearly run on Dr. Mehta's FMLA claim, and the Court will therefore grant Syngenta's motion to dismiss Count IV for failure to state a claim and dismiss Count IV with prejudice.

## III. COUNT V

In Count V, Dr. Mehta alleges that Syngenta violated the Civil Rights Act of 1866, 42 U.S.C. § 1981. Syngenta argues that the Court should dismiss this count under Rule 12(b)(6).

**A. Dr. Mehta Has Not Failed to Sufficiently Plead Racial Discrimination.**

Syngenta's first argument is that Dr. Mehta has failed to plead facts sufficient for the Court to infer that Syngenta took any adverse action against her because of her race. The D.C. Circuit has adopted the *McDonnell Douglas* burden-shifting framework to analyze § 1981 discrimination claims. *See Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005). Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A *prima facie* case has three elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff was subjected to an adverse employment action; and (3) the unfavorable action gives rise to an inference of

discrimination. *Id.* Once the plaintiff makes such a showing, the burden shifts to the employer to specify some "legitimate, nondiscriminatory reason" for the adverse action, after which the burden shifts back to the plaintiff to show that the stated reason is mere pretext for racial discrimination. *Id.* at 802-04.

Syngenta interprets § 1981 as requiring a plaintiff to demonstrate two factors: (1) that she was treated differently than others who were similarly situated; and (2) that she was treated differently than others who were similarly situated because of her race. ECF No. 5 at 12. This is simply not the correct legal standard. Comparator evidence is only one means of proving a § 1981 claim, and although comparator evidence is often useful to a plaintiff's discrimination case, it is not required. *See Dickerson v. District of Columbia*, 315 F. Supp. 3d 446, 454 n.4 (D.D.C. 2018) (citing *Nurriddin v. Bolden*, 818 F.3d 751, 759 (D.C. Cir. 2016)). Count V may not be dismissed simply because Dr. Mehta did not allege the existence of a comparator.

Additionally, when construing Dr. Mehta's Complaint liberally and making all reasonable inferences in her favor, Dr. Mehta has alleged that adverse actions were taken against her due to racial discrimination. Syngenta does not dispute that Dr. Mehta is a member of a protected class, nor does it dispute that Dr. Mehta has sufficiently alleged a number of adverse actions. ECF No. 5 at 10. Syngenta does, however, argue that Dr. Mehta has not adequately drawn a connection between the adverse actions and her race. *Id.* Although Dr. Mehta's Complaint does not specifically state, "Syngenta took these adverse actions against Dr. Mehta due to her race," it does set forth facts sufficient for the Court to draw that inference. For example, she was told that the decision to replace her with a Caucasian male in September of 2014 was because she was not the right fit for the position and her replacement was more relatable and comfortable for her supervisor. ECF No. 1-3 at 6. Drawing all inferences in the

y
z
w

light most favorable to Dr. Mehta, it is reasonable to infer that this was a reference to her being South Asian. Furthermore, Dr. Mehta was told that one of the reasons for her role being changed to reduce her visibility was that people in "small Midwestern towns . . . were not used to people who were different." *Id.* at 8. Again, it is reasonable to infer that this was a reference to her being South Asian. Construing the Complaint liberally, it could also be inferred that the numerous other adverse actions taken against her had a discriminatory motive. Syngenta was supposedly reorganizing the Seeds business, but their reorganization left positions for all employees in Seeds Research and Development except for Dr. Mehta. *Id.* Moreover, Syngenta deviated from its own policies when it refused to pay out her stock options, give her a bonus, etc. *Id.* at 9-10. All of these facts when viewed in conjunction with one another allow for the inference of a discriminatory animus. Syngenta complains that it is unclear whether Dr. Mehta is alleging that these adverse actions occurred because of her race or because of her gender. Dr. Mehta, however, has not brought a claim for gender discrimination—the logical inference is thus that Syngenta's alleged discrimination was based on race. For these reasons, Dr. Mehta has not failed to allege racial discrimination under § 1981.

### B. Dr. Mehta's § 1981 Claim is Not Time-Barred.

Syngenta's second argument is that some of Dr. Mehta's § 1981 allegations are time-barred. According to Syngenta, Dr. Mehta may not use any facts that occurred prior to July 26, 2015 to support her claim. It is true that claims brought under § 1981 have a four-year statute of limitations. *See Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 382-83 (2004) (determining that because 42 U.S.C. § 1981 was amended in 1991, the statute imposing a presumptive four-year statute of limitations to actions arising under statutes enacted after December 1, 1990 applies to § 1981 claims). This means that Dr. Mehta may not sue for any adverse action that

occurred prior to July 26, 2015. It does not, however, mean that all events before that date are entirely irrelevant to her § 1981 claim.

For example, Dr. Mehta alleges that in 2014, Dr. Dyer and Mr. Parr verbally abused her and attributed false information to her, Dr. Dyer lowered her performance rating despite her continued excellent work, and Mr. Parr replaced her with a less-qualified Caucasian male. ECF No. 1-3 at 5-6. Although Dr. Mehta may not base her § 1981 claim on these alleged actions (i.e., these facts cannot constitute "adverse actions" for the purposes of her *prima facie* discrimination claim), they may still be relevant to proving that the adverse actions which occurred after July 26, 2015 were taken for discriminatory reasons. *See, e.g.*, *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (explaining that prior discriminatory acts may be used as "background evidence" to support a claim); *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir. 1966) (noting that "a discrimination analysis must concentrate not on individual incidents, but on the overall scenario"). It is true that Syngenta's decision to terminate only Dr. Mehta from the Seeds team standing alone may not raise an inference of discriminatory animus; however, that decision when viewed in conjunction with Syngenta's words and actions prior to July 26, 2015 could raise such an inference.[2] Essentially, while Dr. Mehta may not recover damages for anything that Syngenta did prior to July 26, 2015, those factual allegations still provide important context for the adverse actions that occurred on or after July 26, 2015.[3]

Syngenta specifically takes issue with Dr. Mehta's claim that she was not selected for the Head of Computational Biology position in 2015 because Dr. Mehta does not state whether this

---

[2] Nothing in this Memorandum Opinion should be taken as an indication of the Court's view on the admissibility of Syngenta's actions prior to July 26, 2015. Syngenta may choose to raise questions of admissibility at a later stage of the litigation. When reviewing a motion to dismiss under Rule 12(b)(6), however, the Court is not yet concerned with admissibility.

[3] Dr. Mehta's opposition suggests that she agrees with this cutoff date and is only attempting to use events prior to July 26, 2015 as background evidence.

alleged adverse action occurred before or after July 26, 2015. Because the Court must make all inferences in the plaintiff's favor, however, the Court must assume that this alleged adverse action occurred on or before July 26, 2015. *See, e.g.*, *Leftwich v. Gallaudet Univ.*, 878 F. Supp. 2d 81, 93 (D.D.C. 2012) (noting that dismissal is appropriate only if the complaint on its face is *conclusively* time-barred). Of course, Dr. Mehta's ultimate ability to prevail on this claim is a separate question, but that is an issue for another day. Dr. Mehta's § 1981 claim is not time-barred, and the Court will deny Syngenta's motion to dismiss Count V.

## CONCLUSION

Based on the foregoing, the Court will **GRANT IN PART AND DENY IN PART** Syngenta's Partial Motion to Dismiss (ECF No. 5). The motion will be **DENIED** with respect to Count III, **GRANTED** with respect to Count IV, and **DENIED** with respect to Count V.

It will be **ORDERED** that Count IV is **DISMISSED** with prejudice.

A separate Order accompanies this Memorandum Opinion.

Date: May 6, 2020

/s/
Royce C. Lamberth
United States District Court Judge